**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 22, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————————

JAMES CROPPER,

     Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

     Respondent - Appellee.

No. 15-9003

————————————————————

**Appeal from the Commissioner of Internal Revenue**
**(CIR No. 5388-13L)**
————————————————————

Lowell H. Becraft, Jr., Huntsville, Alabama, for Petitioner-Appellant.

Janet A. Bradley, U.S. Department of Justice, Washington, D.C. (Caroline D. Ciraolo, Acting Assistant Attorney General, and Bruce R. Ellisen, U.S. Department of Justice, Washington, D.C., with her on the brief), for Respondent-Appellee.

————————————————————

Before **MATHESON**, **BALDOCK**, and **MORITZ**, Circuit Judges.
————————————————————

**MORITZ**, Circuit Judge.
————————————————————

When the Internal Revenue Service notified James Cropper of its intent to collect unpaid taxes by levying his property, Cropper requested a collection due process (CDP) hearing with the IRS Office of Appeals. The Office of Appeals

determined that the IRS could proceed with the proposed levy. Cropper sought judicial review, and the United States Tax Court sustained the Office of Appeals' determination. Because we agree with the Tax Court that the Office of Appeals didn't abuse its discretion in determining that the IRS could proceed with the levy, we affirm.

## BACKGROUND

Preliminarily, in order to place the relevant facts in context, we find it helpful to summarize the statutory and regulatory context in which the facts developed.

The IRS has authority to collect a tax by levying the property of a taxpayer who fails, within 10 days of receiving a notice and demand, to pay the tax owed. 26 U.S.C. § 6331(a). Before exercising that authority, the IRS must notify the taxpayer of (1) the IRS' intent to levy the property, *see id.* § 6331(d)(1), and (2) the taxpayer's right to a CDP hearing, *see id.* § 6330(a)(1).

In the CDP hearing,[1] a taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy including—(i) appropriate spousal defenses; (ii) challenges to the appropriateness of collection actions; and (iii) offers of collection alternatives." *Id.* § 6330(c)(2)(A). The taxpayer may also challenge "the

---

[1] Treas. Reg. § 301.6330-1(d)(2), Q&A (D6) explains the informal nature of a CDP hearing. "A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof." *Id.* The IRS doesn't require that such meetings be transcribed, and the taxpayer doesn't have the right to subpoena and examine witnesses at a CDP hearing. *Id.*

2

existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." *Id.* § 6330(c)(2)(B).

As part of the CDP hearing, the Office of Appeals must "obtain verification from the [IRS] that the requirements of any applicable law or administrative procedure have been met." *Id.* § 6330(c)(1). And it must consider that verification in determining whether the IRS can proceed with a proposed levy. *Id.* § 6330(c)(3)(A). Additionally, the Office of Appeals must consider the issues raised by the taxpayer, and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *Id.* § 6330(c)(3)(B)-(C).

Following the CDP hearing, the Office of Appeals issues a Notice of Determination. Treas. Reg. § 301.6330-1(f). In the Notice, the Office of Appeals details its findings and decisions on all matters it considered in the hearing; sets forth any agreements it made with the taxpayer, any relief it provided to the taxpayer, and any future actions required from the taxpayer or the IRS; and advises the taxpayer of his or her right to seek judicial review by timely filing a petition in the Tax Court. Treas. Reg. § 301.6330-1(e)(3), Q&A (E8); *see also* 26 U.S.C. § 6330(d)(1) (permitting taxpayer to petition Tax Court for review "within 30 days of a [Notice of] determination"). The Tax Court reviews the Office of Appeals' administrative "determination[s]—including the verification that 'the requirements of any applicable

3

law or administrative procedure have been met'—for abuse of discretion." *Meyer v. Comm'r*, 106 T.C.M. (CCH) 599, 2013 WL 6169420, at \*4 (2013). If the validity of the underlying tax liability is properly at issue in the CDP hearing, the Tax Court reviews that issue de novo. *Craig v. Comm'r*, 119 T.C. 252, 260 (2002).

Keeping that framework in mind, we turn to the facts of this case.

James Cropper didn't file federal income tax returns for tax years 2006, 2007, or 2008. The IRS prepared substitute returns for each tax year and mailed three separate deficiency notices via certified mail to Cropper's last known address, a post office box in Norwood, Colorado. After Cropper failed to respond to the deficiency notices, the IRS assessed tax liabilities against Cropper for each of the three tax years. The IRS subsequently mailed Cropper (1) a lien notice, dated October 6, 2011, informing him that his property was subject to a federal tax lien; and (2) a levy notice, dated May 7, 2012, informing him of its intent to levy his property.

In response to the levy notice, Cropper timely requested a CDP hearing. A settlement officer with the Office of Appeals informed Cropper of a scheduled telephone CDP hearing on September 20, 2012. Before the scheduled hearing, the settlement officer obtained documents from the IRS, reviewed Cropper's IRS account transcripts, verified that the IRS followed all applicable administrative and legal procedures before proceeding with the proposed levy, confirmed that the IRS sent all required notices to Cropper's Norwood address, and determined that the tax assessments were therefore valid.

4

Because Cropper subsequently failed to participate in the scheduled telephone CDP hearing and didn't respond to the officer's requests to reschedule it, the officer informed Cropper that she would conduct the CDP hearing through written correspondence. Over the next two months, Cropper responded to the officer's letters by asserting that he never received the deficiency notices and never had an opportunity to challenge the underlying tax liabilities. But Cropper failed to submit any documents the officer requested for purposes of the CDP hearing, any evidence to support his assertion that he never received the deficiency notices, or any information to dispute the amount of the underlying tax liabilities.

The Office of Appeals subsequently issued a Notice of Determination concluding that (1) the IRS followed all legal and administrative requirements to proceed with the levy action, (2) the amounts of the underlying liabilities were valid and Cropper failed to submit any evidence to the contrary despite being provided the opportunity to do so, and (3) the levy action balanced the need for the efficient collection of taxes with the legitimate concerns of the taxpayer.

Cropper timely sought judicial review, and the parties agreed to submit the case to the Tax Court on stipulated facts and without a trial.[2] Cropper argued that the Office of Appeals (1) should have allowed him to challenge the underlying tax liabilities because he never received the deficiency notices, (2) should have provided

---

[2] Tax Court Rule 122(a) provides that "[a]ny case not requiring a trial for the submission of evidence . . . may be submitted at any time after joinder of issue (see Rule 38) by motion of the parties filed with the Court. The parties need not wait for the case to be calendared for trial and need not appear in Court."

him a face-to-face CDP hearing, (3) failed to provide him with evidence to support the IRS' claim to the assessed taxes, and (4) erroneously determined that the IRS met all applicable requirements to proceed with the proposed levy. *Cropper v. Comm'r*, 108 T.C.M. (CCH) 34, 2014 WL 3408096, at *3 (2014).

The Tax Court sustained the Office of Appeals' determination. The court reasoned that regardless of whether Cropper received the deficiency notices, he "failed to make any specific contentions or to proffer any evidence before the Court showing why [the Commissioner's] liability determinations [were] incorrect." *Id.* at *5. The court also found that the Office of Appeals didn't abuse its discretion in determining that (1) Cropper wasn't entitled to a face-to-face CDP hearing, (2) the IRS properly mailed deficiency notices to Cropper's last known address, and (3) the IRS met all applicable requirements before proceeding with the levy action. *Id.* at *5-6. Cropper timely appeals.[3]

## DISCUSSION

We ordinarily review the Tax Court's factual findings for clear error and its conclusions of law de novo. *Mitchell v. Comm'r*, 775 F.3d 1243, 1246 (10th Cir. 2015). However, when the Tax Court decision rests on its review of an Office of Appeals' determination following a CDP hearing, we apply the same standards as the

---

[3] Cropper represented himself throughout the administrative proceedings, in the Tax Court, and when he commenced this appeal. Cropper moved for leave to proceed on appeal without prepayment of costs or fees but later retained counsel who prepared the appellate brief and presented oral argument. Because Cropper retained counsel, we deny his motion to proceed in forma pauperis.

6

Tax Court. Thus, we review the Office of Appeals' determinations about challenges to the amount of the underlying tax liability de novo and its administrative determinations unrelated to the amount of tax liability for abuse of discretion. *Gyorgy v. Comm'r*, 779 F.3d 466, 472-73, 480 (7th Cir. 2015); *Jones v. Comm'r*, 338 F.3d 463, 466 (5th Cir. 2003).[4]

Here, Cropper doesn't challenge the amount of the underlying tax liabilities. Instead, he argues that the Office of Appeals abused its discretion in determining the IRS met all applicable requirements to proceed with the proposed levy. Primarily, he contends the IRS failed to prove it mailed the deficiency notices as required by 26 U.S.C. § 6212(a). But he also asserts that the IRS' alleged failure to produce proof of mailing demonstrates that he never actually received the deficiency notices. According to Cropper, because he never actually received the deficiency notices, he is entitled to relief under 26 U.S.C. § 6330, which he interprets as "stat[ing] that 'if the person did not receive any statutory notice of deficiency,' he is lawfully entitled to have those notices set aside." Aplt. Br. 32 (quoting § 6330).

We conclude the IRS sufficiently proved that it mailed the deficiency notices and is therefore entitled to a presumption that Cropper received those notices. And Cropper's mere assertion that he didn't receive them doesn't rebut that presumption.

---

[4] We have previously identified this two-tiered standard of review as appropriate in a CDP case, but only in non-precedential opinions. *See, e.g.*, *Poindexter v. Comm'r*, 321 F. App'x 771, 773 (10th Cir. 2009) (unpublished); *Shaffer v. Comm'r*, 55 F. App'x 532, 534 (10th Cir. 2003) (unpublished).

7

Moreover, even if Cropper didn't receive the notices, he is mistaken that § 6330 entitles him to have the tax assessments set aside.

**I.    The Office of Appeals didn't abuse its discretion in determining that the IRS properly mailed deficiency notices to Cropper's last known address as required by 26 U.S.C. § 6212.**

In determining that the IRS can proceed with a proposed levy, the Office of Appeals must verify that the IRS met "the requirements of any applicable law or administrative procedure" before commencing the collection action. 26 U.S.C. § 6330(c)(1), (c)(3)(A). Cropper argues that the Office of Appeals abused its discretion in verifying that the IRS met all such requirements here because the IRS failed to prove that it properly mailed the deficiency notices to his last known address.

The IRS must send a deficiency notice to the taxpayer's "last known address" by certified mail or registered mail before it assesses liability for unpaid taxes. *Id.* § 6212(a), (b)(1). The IRS satisfies this obligation if it mails the notice "to the taxpayer's last known address, even if the taxpayer does not actually receive the notice." *Guthrie v. Sawyer*, 970 F.2d 733, 737 (10th Cir. 1992); *see also Tatum v. Comm'r*, 85 T.C.M. (CCH) 1200, 2003 WL 1918914, at *3 n.4 (2003) (noting that IRS satisfies § 6212's mailing requirement by sending notice to taxpayer's last known address "regardless of receipt or nonreceipt"). If the IRS fails to prove that it properly mailed a deficiency notice, any tax assessment based on that notice is

8

invalid. *Hoyle v. Comm'r*, 131 T.C. 197, 205 (2008);[5] 26 U.S.C. § 6213(a) (requiring IRS to notify taxpayer of deficiency and permit timely petition for redetermination before assessing tax liability).

The IRS must prove it properly mailed a deficiency notice "by competent and persuasive evidence." *Welch v. United States*, 678 F.3d 1371, 1378 (Fed. Cir. 2012). The IRS is entitled to a rebuttable presumption of proper mailing if it "(1) establishe[s] the existence of a notice of deficiency and (2) produce[s] a properly completed PS Form 3877 certified mail log." *Id.* If the presumption applies, the burden shifts to the taxpayer to rebut the presumption "by clear and convincing evidence." *Id.* But the IRS isn't entitled to the presumption if it doesn't show the existence of a deficiency notice or if it relies on an improperly completed PS Form 3877. *Id.* at 1378-79; *see also O'Rourke v. United States*, 587 F.3d 537, 541 (2d Cir. 2009) (identifying certain defects that render PS Form 3877 incomplete). When there is no dispute over the existence of a deficiency notice but the IRS produces only a defective PS Form 3877, the IRS generally "must come forward with evidence corroborating an actual timely mailing of the notice of deficiency." *Welch*, 678 F.3d at 1378-79.

Here, the IRS provided the Office of Appeals with copies of all three deficiency notices, thus proving the notices existed. The IRS also provided copies of

_____

[5] The Tax Court's decisions are not binding on this court, but "[r]ulings by the Tax Court on matters of tax law are . . . persuasive authority, especially if consistently followed." *Esgar Corp. v. Comm'r*, 744 F.3d 648, 652 (10th Cir. 2014).

three corresponding PS Forms 3877, each containing (1) an entry showing the IRS sent notice to Cropper's Norwood address via certified mail, (2) a certified tracking number corresponding with the tracking number on the deficiency notice, and (3) a date stamp from the U.S. Postal Service indicating when the IRS delivered the notice to the post office.

As the Commissioner acknowledged before the Tax Court, the IRS isn't entitled to the presumption of mailing in this case because the PS Forms 3877 weren't signed by a postal service employee and didn't indicate how many pieces of mail the postal employee received. *Cropper*, 108 T.C.M. (CCH) 34, 2014 WL 3408096, at *5; *see O'Rourke*, 587 F.3d at 541 (identifying these same omissions as defects that rendered PS Form 3877 incomplete and precluded presumption of proper mailing). But, even when the IRS isn't entitled to a presumption of mailing due to a defective PS Form 3877, it "may meet its burden with evidence that is 'otherwise sufficient.'" *Welch*, 678 F.3d at 1377 (quoting *O'Rourke*, 587 F.3d at 540-41). And, like the Second Circuit in *O'Rourke*, we conclude that the IRS' proof of mailing is "otherwise sufficient" here because the IRS produced copies of all three deficiency notices, the defects in the PS Forms 3877 are minor, and the Forms 3877 are date-stamped with the date they were submitted to the Postal Service for mailing. *See* 587 F.3d at 540-42 (finding PS Forms 3877 defective and refusing to apply presumption of mailing, but finding other evidence of mailing sufficient).

Moreover, the Office of Appeals didn't rely only on the incomplete PS Forms 3877 to verify that the IRS mailed the notices to Cropper's last known address. Instead, it appropriately reviewed and considered other corroborating information. *See Welch*, 678 F.3d at 1378-79; *Meyer*, 106 T.C.M. (CCH) 599, 2013 WL 6169420, at *9 (noting that "a failure to precisely comply with the Form 3877 mailing procedures may not be fatal if the Commissioner can come forward with other evidence that the mailing procedures were followed"). Specifically, the settlement officer reviewed Cropper's IRS account transcripts to verify that the IRS issued deficiency notices before assessing tax liabilities against Cropper. The officer also confirmed that the IRS used Cropper's Norwood address—the address on file with the IRS since 2003—not only for mailing the deficiency notices, but also to mail the lien notice, the levy notice, and all correspondence relating to the CDP hearing. And the officer noted that Cropper's IRS account transcripts didn't reflect that the Postal Service returned as undeliverable any correspondence mailed to the Norwood address.[6]

---

[6] In his brief, Cropper discusses several cases invalidating tax assessments when the evidence demonstrated the IRS knew, or should have known, that it didn't effectively mail deficiency notices—i.e., evidence that the IRS used a clearly incorrect or outdated address or that IRS records reflected return of the notices as undeliverable. But these cases don't aid Cropper here because the administrative record in this case contains no similar evidence. Instead the record demonstrates that the IRS mailed the deficiency notices to Cropper's last known address—the Norwood address—the same address Cropper has used in all his correspondence with the Office of Appeals, the Tax Court, and this court.

Finally, the administrative record includes three "Certificates of Assessments, Payments, and Other Specified Matters" (Forms 4340) indicating that the IRS created or issued the deficiency notices roughly 10 days before the mailing dates indicated on the PS Forms 3877. And the deficiency amounts on the Forms 4340 mirror the amounts shown on the deficiency notices. We have previously recognized Form 4340 as "presumptive proof of a valid assessment." *Guthrie*, 970 F.2d at 737. Here, in light of the other evidence in the administrative record, we view these forms as further evidence supporting the Office of Appeals' determination that the IRS properly mailed the deficiency notices to Cropper.

Because the IRS' evidence of proper mailing is both competent and persuasive, we conclude that the Office of Appeals didn't abuse its discretion in determining that the IRS properly mailed the deficiency notices to Cropper's last known address and that the IRS met all applicable requirements to proceed with the levy action.

**II.     Because the record demonstrates that the IRS properly mailed the deficiency notices, we may presume that Cropper received them, and Cropper hasn't overcome that presumption.**

Cropper also asserts that the IRS' alleged failure to produce proof of mailing demonstrates that he never actually received the deficiency notices. Cropper contends that this failure entitles him to relief under 26 U.S.C. § 6330 which he claims requires that the notices be set aside if an individual doesn't receive a statutory notice of deficiency.

12

But as we have found, the record demonstrates that the IRS properly mailed the deficiency notices to Cropper's last known address. Thus, we can presume that Cropper received them. *See Klingenberg v. Comm'r*, 104 T.C.M. (CCH) 470, 2012 WL 5035605, at *5 (2012) (explaining that a "presumption of official regularity and delivery arises if the record reflects that a notice of deficiency was properly mailed to the taxpayer," and that unless the taxpayer rebuts this presumption with "strong evidence to the contrary" the court may find the taxpayer received the notice); *Casey v. Comm'r*, 97 T.C.M. (CCH) 1751, 2009 WL 1606226, at *4 (2009) (discussing presumption of delivery and noting receipt is presumed "in the absence of clear evidence to the contrary"). Moreover, to rebut the presumption that he received the deficiency notices, Cropper produced only his own repeated, unsworn statements that he didn't receive them. We find this insufficient. *See Klingenberg*, 104 T.C.M. (CCH) 470, 2012 WL 5035605, at *5 ("A taxpayer's self-serving claim that he did not receive the notice of deficiency will generally be insufficient to rebut the presumption.").

Finally, even if Cropper had rebutted the presumption that he received the deficiency notices, he wouldn't be entitled to the relief he seeks—that the notices be set aside. Section 6330(c)(2)(B) provides that in a CDP hearing, a taxpayer may challenge "the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Cropper contends

13

that because he never actually received the deficiency notices, this section requires that the tax assessments be set aside and vacated.

This argument is flawed for two reasons. First, as just discussed, the record demonstrates that the IRS properly mailed the deficiency notices to Cropper's last known address, and thus we may presume that Cropper received them.

Second, even if we accepted Cropper's unsworn denials as sufficient to rebut the presumption that he received the deficiency notices, Cropper misunderstands the remedy provided by § 6330. We agree with Cropper that, unlike § 6212, which requires only proof of mailing, *see Tatum*, 85 T.C.M. (CCH) 1200, 2003 WL 1918914, at *3 n.4, the plain language of § 6330(c)(2)(B) "contemplates actual receipt of the notice of deficiency by the taxpayer," *id.* at *3; *see also Conn v. Comm'r*, 96 T.C.M. (CCH) 72, 2008 WL 2986391, at *2 (2008) (rejecting the Commissioner's argument that "for purposes of section 6330(c)(2)(B), the mailing of a notice of deficiency to the taxpayer's last known address is sufficient," and explaining that "[u]nder section 6330(c)(2)(B), the *receipt* of a notice of deficiency, not its *mailing*, is the relevant event").

However, the plain language of § 6330(c)(2)(B) doesn't support Cropper's argument that when a taxpayer doesn't receive a deficiency notice, the assessment must be vacated. Instead, in that situation § 6330(c)(2)(B) permits the taxpayer to "raise challenges to the existence or amount of the underlying tax liability" at the CDP hearing. 26 U.S.C. § 6330(c)(2)(B); *see Gentile v. Comm'r*, 592 F. App'x 824,

14

827 n.1 (11th Cir. 2014) (unpublished) (relying on plain language of § 6330(c)(2)(B) to reject taxpayer's argument that his failure to receive notices of deficiency invalidated underlying assessments); *see also Conn*, 96 T.C.M. (CCH) 72, 2008 WL 2986391, at *3 ("In cases where the taxpayer did not receive a notice of deficiency for a particular year and did not have an opportunity to challenge the underlying tax liability, we have remanded the matter to the Commissioner's Office of Appeals for a hearing during which the taxpayer may dispute the liability."); *Tatum*, 85 T.C.M. (CCH) 1200, 2003 WL 1918914, at *4 (finding that taxpayers didn't receive notice of deficiency and "should have been allowed to challenge their underlying tax liabilities" at CDP hearing).

Thus, even if Cropper didn't actually receive the deficiency notices, he isn't entitled to have the tax assessments invalidated.[7] Instead, he's only entitled to challenge the underlying tax liabilities through a CDP hearing. And while the settlement officer here opined that Cropper couldn't challenge his underlying tax liabilities because she determined that the IRS properly mailed the deficiency notices, she nevertheless advised Cropper he could submit corrected returns for the tax years

---

[7] Cropper cites *Hoyle*, 131 T.C. 197, for the proposition that if he didn't receive a notice of deficiency, his tax assessment is invalid. There, the Tax Court found a tax assessment invalid because the IRS couldn't show it actually mailed a notice of deficiency to the taxpayer. *Hoyle*, 131 T.C. at 204. But *Hoyle* didn't address a situation where the IRS duly mailed a notice of deficiency yet the taxpayer didn't actually receive the notice. In such a situation, the remedy is that provided by § 6330(c)(2)(B): the taxpayer is permitted to contest the liability at the CDP hearing. *Conn*, 96 T.C.M. (CCH) 72, 2008 WL 2986391, at *3.

at issue if he never received those notices. Yet Cropper never did so, choosing instead to simply repeat his assertions that he never received the deficiency notices.

Cropper argued in the Tax Court that the Office of Appeals abused its discretion when it purportedly precluded him from challenging the underlying tax liabilities. But, as the Tax Court noted, even in challenging the settlement officer's actions Cropper still "failed to make any specific contentions or to proffer any evidence before the Court showing why [the Commissioner's] liability determinations [were] incorrect." *Cropper*, 108 T.C.M. (CCH) 34, 2014 WL 3408096, at \*5; *see Jones v. Comm'r*, 903 F.2d 1301, 1303 (10th Cir. 1990) (explaining that a "statutory notice of deficiency is presumed correct; [and] the burden rests on the taxpayer to establish that the determination of income is erroneous"); *see also Gyorgy*, 779 F.3d at 480-81 (concluding taxpayer had right to contest underlying tax liabilities at CDP hearing because he hadn't received deficiency notices, but further concluding that taxpayer's failure to present arguments or evidence to the Tax Court or the Appeals Office to challenge the liabilities precluded appellate review); *Gentile*, 592 F. App'x at 826-27 (concluding sole issue taxpayer raised on appeal—whether Tax Court erred in concluding taxpayer received notices of deficiency—wasn't relevant because Tax Court declined to decide the actual-receipt-of-notice issue given taxpayer's failure to present any information, documents, or other evidence to dispute the underlying liability); *Portwine v. Comm'r*, 109 T.C.M. (CCH) 1151, 2015 WL 757374, at \*3 (2015) (noting that

16

taxpayer fails to preserve challenge to underlying tax liability for Tax Court review if taxpayer "fails to present [Office of] Appeals with any evidence regarding that liability after being given a reasonable opportunity to do so").

In sum, Cropper misconstrues the remedy provided by § 6330. Under that section, when a taxpayer doesn't actually receive a deficiency notice, the taxpayer may challenge the underlying tax liability through a CDP hearing but isn't entitled to have the tax assessment set aside. And while the record here indicates that Cropper actually received the deficiency notices and thus wasn't entitled to challenge the underlying tax liability, he nevertheless was given the opportunity to do so through the CDP hearing. He failed to take advantage of that opportunity, and he is entitled to no further relief under § 6330(c)(2)(B).

## CONCLUSION

We affirm the Tax Court's decision sustaining the Office of Appeals' determination permitting the IRS to proceed with its levy of Cropper's property. We deny Cropper's motion to proceed on appeal without prepayment of fees and remind him he remains immediately obligated to pay the appellate filing fee in full.

17