# United States Tax Court

T.C. Memo. 2022-125

ERIC SCHWARTZ,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent[1]

————————

Docket No. 17291-14L.                    Filed December 21, 2022.

————————

*Karen J. Lapekas*, for petitioner.

*Derek P. Richman* and *Daniel C. Munce*, for respondent.

## SUPPLEMENTAL MEMORANDUM
## FINDINGS OF FACT AND OPINION

VASQUEZ, *Judge*: In this collection due process (CDP) case, the Internal Revenue Service (IRS) Office of Appeals (Appeals) issued notices of determination sustaining proposed levies to collect petitioner's federal income tax liabilities for 2006, 2007, 2010, 2011, and 2012 (years in issue).[2] After this case was tried, we remanded it to Appeals to clarify the administrative record as to whether Appeals had advised petitioner to submit additional evidence regarding a refund claim. *See Schwartz I*. Appeals conducted a supplemental CDP hearing and issued a supplemental notice of determination sustaining the proposed levies for

———————————

[1] This Opinion supplements our previous Opinion *Schwartz v. Commissioner* (*Schwartz I*), T.C. Memo. 2019-162.

[2] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019). Since both names were in effect at different times relevant to this case, we will refer to them both as Appeals.

[*2] the years in issue. Petitioner seeks review of Appeals' determinations, as supplemented, pursuant to section 6330(d)(1).[3]

The issues for decision are (1) whether we have jurisdiction to review a determination of Appeals as to whether to apply a credit elect overpayment from 2005 against the liabilities at issue and, if so, (2) whether petitioner's communications with the IRS pertaining to his 2005 overpayment constituted an informal claim for refund.

## FINDINGS OF FACT

Because the findings of fact in *Schwartz I* are relevant to the issues addressed herein, we incorporate some of them verbatim. We also intersperse, where appropriate, additional findings based upon the administrative record developed at the supplemental CDP hearing. The parties have stipulated some additional facts, and those facts are so found.[4] We incorporate the parties' First Stipulation of Facts, First Supplemental Stipulation of Facts, and accompanying Exhibits by this reference. Petitioner resided in Florida when the Petition in this case was filed.

*2005 overpayment*

In 2006 petitioner was party to a divorce action before the Family Division of the Circuit Court for Miami-Dade County, Florida (circuit court). The circuit court directed petitioner and his ex-spouse to make an estimated tax payment of $150,000 to cover their expected 2005 federal income tax liability arising from the sale of their marital residence.[5] Petitioner and his ex-spouse made the payment on or about April 17, 2006. They also filed a six-month extension request for their 2005 federal income tax return, causing it to be due October 16, 2006.[6]

---

[3] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times.

[4] On November 17, 2020, the parties jointly filed a Motion to Reopen the Record and a First Supplemental Stipulation of Facts with Exhibits 43-J through 66-J. Those Exhibits constitute the administrative record from the supplemental CDP hearing. By Order dated November 18, 2020, we granted the parties' Joint Motion and admitted Exhibits 43-J through 66-J into evidence.

[5] The credit was later allocated $75,000 to each spouse.

[6] April 15, 2006, fell on a Saturday; October 15, 2006, fell on a Sunday.

**[\*3]**    Petitioner did not file a joint or separate return by the extended deadline.  He interpreted the circuit court order as a bar to filing a return until the divorce was final and/or the order was lifted.[7]  Therefore, petitioner delayed filing a return until after the divorce became final several years later.

Petitioner attempted to keep the IRS apprised of his situation by telephone.  On August 13 and October 19, 2007, he called the IRS to discuss his delinquent return for 2005 and his pending divorce action.  During the latter phone call, petitioner discussed the possibility of the IRS's preparing a substitute for return for him and his ex-spouse.  In February 2008 an IRS employee added the following notation to petitioner's 2005 file: "WORKING V5. SUPOL SHOWS REFUND."

Meanwhile the IRS issued petitioner a Notice CP–515, Request For Your Tax Return, advising him that a 2005 return had not been filed and that he had a $150,000 credit balance.  The notice included a form seeking information about petitioner's return and the allocation of the credit.  On or about March 28, 2008, petitioner mailed the form to the IRS.  He checked the boxes on the form directing the IRS to "Apply the credit to the tax return, tax year [2005] and SSN on this letter" and "Apply the credit to another tax return, tax year, and SSN below."  Petitioner signed the form, attesting under penalty of perjury that the information thereon was "true, correct, and complete."  He also attached to the form a letter, which stated:

---

[7] The order stated in relevant part:

   6.0 Neither party shall draw upon, utilize, or otherwise use the $150,000.00 currently held by the I.R.S. in the parties' joint names.  Any tax returns filed by either party for which payment is required to the I.R.S. shall be filed contemporaneously with payment for all sums due by the individual filing the return.  Any portion of the $150,000.00 returned to either party shall be placed in the escrow account at Mellon Bank created pursuant to paragraph 1.0 above.  These funds shall not be removed or distributed to either party absent a Court Order or written agreement of both parties.

   . . . .

   8.0 Any other marital funds not specifically delineated above received by either party shall be placed in the escrow account at Mellon Bank created pursuant to paragraph 1.0 above.  These funds shall not be removed or distributed to either party absent a Court Order or written agreement of both parties.

**[*4]** *RE: Delay in filing tax returns for 2005 thru [sic] 2008:*

*Eric Schwartz*
*Social Security Number: . . .*

Dear administrator,

In April of 2006 you received an anticipated tax liability payment to be applied toward the 2005 tax year forward which remains a pending credit.

I am in receipt of the attached letter [Notice CP–515] seeking to determine the status of my 2005 return and how the above credit should be handled.

Therefore please be advised that the referenced returns have been delayed due to a pending divorce and ask that the above mentioned payment be credited toward the tax liability associated therewith once they are filed.

Thereafter petitioner received a letter dated May 7, 2008, from the IRS which stated in relevant part:

Dear Taxpayer:

Thank you for your correspondence received Apr. 10, 2008.

We haven't resolved this matter because we haven't completed all the research necessary for a complete response. We will contact you again within 45 days to let you know what action we are taking. You don't need to do anything further now on this matter.

Petitioner subsequently received another letter from the IRS dated August 7, 2008, which stated in relevant part:

Dear Taxpayer:

We previously sent you a letter concerning your inquiry received Apr. 10, 2008. Although we try to respond quickly, extensive research is often required. At this time we are unable to provide a complete response because:

[*5]      Due to heavy workload, we have not yet completed our research to resolve your inquiry.

. . . .

Please allow an additional 45 days for us to obtain the information we need and to let you know what action we are taking.

Over the next few years, petitioner did not receive additional correspondence from the IRS regarding the $150,000 estimated tax payment.  However, petitioner and IRS personnel had five more telephone conversations between 2009 and 2010 discussing petitioner's divorce, unfiled returns, adjusted basis in the former marital residence, and estimated tax payment.  On December 14, 2009, the circuit court issued an amended final judgment of dissolution of marriage.  Several postjudgment motions followed.

In October 2011, after the postjudgment motions were resolved, petitioner filed his delinquent income tax returns for 2005, 2006, 2007, and 2010.  On his 2005 return petitioner reported total tax of $45,282 and an estimated payment of $75,000.  Accordingly, he claimed a refund of $29,718.  On line 74 of the return petitioner specified that he wanted to apply the entire amount of the claimed refund against his 2006 estimated tax.

Respondent accepted petitioner's 2005 return as filed, assessed the reported liability, and credited the $75,000 payment against that liability.  However, on April 30, 2012, respondent transferred the $29,718 overpayment for 2005 to an excess collections account.[8]

On his 2006 return petitioner reported tax of $5,941, claimed estimated tax payments of $29,718, and elected to apply the remaining $23,777 for the following year.  On his 2007 return petitioner reported tax of $707, claimed estimated tax payments of $23,777, and elected to apply the remaining $23,070 for the following year.  For 2010 petitioner

---

[8] Although an IRS transcript for 2005 indicates that petitioner's refund claim was disallowed on that date, respondent does not dispute the existence or amount of the 2005 overpayment.  There is no indication in the record that the IRS issued a notice of disallowance pursuant to section 6532(a)(1).

**[\*6]** reported tax of $5,217 on his return but did not claim estimated tax payments arising from a prior year credit.[9]

On May 12, 2012, and July 11, 2013, petitioner timely filed his returns for 2011 and 2012.[10] On his 2011 return petitioner reported tax of $630 and claimed estimated tax payments of $23,070, which is the amount petitioner had elected on his 2007 return to apply for taxable year 2008. Petitioner elected to apply the remaining $22,440 for his 2012 tax year. On his 2012 return petitioner reported tax of $12,517 and claimed estimated tax payments of $22,440.

The IRS assessed the reported tax for the years in issue. Having transferred petitioner's 2005 overpayment to an excess collections account, respondent did not credit the 2005 overpayment against those liabilities.

*Initial CDP hearing and judicial proceedings*

Respondent issued a final notice of intent to levy with respect to petitioner's 2006, 2007, 2010, and 2011 tax years. Respondent later issued a separate final notice of intent to levy with respect to petitioner's 2012 tax year. Petitioner timely requested CDP hearings in response to both notices and asked Appeals to apply his 2005 overpayment against his liabilities for the years in issue.

On June 9, 2014, respondent issued notices of determination sustaining the proposed levies. The notices state: "You were advised on 4/23/2014 to submit additional information for consideration regarding the specifics you claim would sway the decision of the Appeals Officer. As of May 19, 2014, this information has not been received."

Petitioner timely petitioned this Court, and trial was held in Miami, Florida. The parties disputed whether petitioner had preserved his informal claim argument during the CDP hearing. In *Schwartz I*, at \*22–23, we held that the administrative record was insufficient for the Court to resolve that issue. Accordingly, we remanded this case to Appeals to clarify the administrative record as to whether Appeals had advised petitioner to submit additional evidence regarding his refund

---

[9] The record indicates that petitioner has no income tax liabilities for nondetermination years 2008 and 2009. Tax returns for those years are not in evidence.

[10] For those years petitioner timely filed requests for extension.

[*7] claim. *Id.* We further instructed Appeals, if it was unable to conclude that petitioner was so advised, to consider any evidence or information petitioner might wish to submit. *Id.*

*Supplemental CDP hearing*

Appeals assigned the supplemental CDP hearing to Appeals Officer (AO) Maria Smith. After conferring with the Appeals employees who had conducted the initial CDP hearing and reviewing the administrative file, AO Smith was unable to confirm that petitioner had had an opportunity to submit additional information regarding the specifics of his refund claim. Accordingly, she gave petitioner an opportunity to submit evidence or information pertaining to his informal refund claim. Petitioner's counsel asked AO Smith to consider (1) petitioner's Simultaneous Opening Brief and Simultaneous Answering Brief; (2) the March 28, 2008, correspondence from petitioner to the IRS; (3) the May 7, 2008, correspondence from the IRS to petitioner; (4) the August 7, 2008, correspondence from the IRS to petitioner; and (5) a copy of an IRS computer transcript for petitioner's 2005 taxable year dated May 13, 2006. After reviewing those documents and conducting further research, AO Smith determined that petitioner's March 28, 2008, correspondence did not constitute an informal refund claim. She informed petitioner's counsel of her determination by telephone and offered to consider collection alternatives. Petitioner, through his counsel, declined the invitation.

AO Smith reviewed IRS records for the years in issue and confirmed that petitioner's liabilities had been properly assessed and that all other legal requirements had been met. Thereafter she prepared a supplemental notice of determination sustaining the proposed levies. On April 20, 2020, Appeals issued the supplemental notice, which states:

> The Appeals Officer concluded your letter of March 28, 2008 was not a valid informal claim for refund as it does not notify the Service you were seeking a refund on the December 31, 2005 tax year or that you overpaid the taxes on the December 31, 2005 tax year or asked the Service to apply the refund to tax years after 2005. Per Treas. Reg. Section 301.6402-2(b)(1), a claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to appraise [sic] the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that is made

[*8]     under penalties of perjury.  A claim which does not comply with this requirement will not be considered for any purposes as a claim for refund or credit.

On November 17, 2020, the parties moved to reopen the record to allow for the submission of the supplemental administrative record. After we granted the parties' Joint Motion, the parties filed supplemental briefs.

OPINION

I.     *Standard of review*

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case.  The general parameters for such review are marked out by our precedents.  Where the validity of the taxpayer's underlying liability is properly at issue, we review the AO's determination of that issue de novo.  *Sego v. Commissioner*, 114 T.C. 604, 610 (2000).  Where there is no dispute as to the taxpayer's underlying liability, we review the administrative determination for abuse of discretion.  *Cropper v. Commissioner*, 826 F.3d 1280, 1284 (10th Cir. 2016), *aff'g* T.C. Memo. 2014-139; *Goza v. Commissioner*, 114 T.C. 176, 182 (2000).  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

Petitioner's sole contention is that his 2005 overpayment offsets his tax liabilities for the years in issue.  There is some uncertainty in our precedents as to whether a de novo or an abuse-of-discretion standard of review applies in a situation such as this.[11]  As explained

_____

[11] In *Landry v. Commissioner*, 116 T.C. 60 (2001), we applied a de novo standard of review where the taxpayer challenged the Commissioner's failure to apply an overpayment credit from another year.  We concluded that this was a challenge to the taxpayer's underlying tax liability, i.e., "the amount unpaid after application of credits to which [the taxpayer was] entitled."  *Id.* at 62.  On the other hand, we have applied abuse-of-discretion review when considering challenges to the Commissioner's application of a tax payment.  *See Melasky v. Commissioner*, 151 T.C. 89, 92 (2018) (holding that a dispute as to whether a payment was properly credited to the taxpayer's account for a particular year is not a challenge to his underlying liability), *aff'd*, 803 F. App'x 732 (5th Cir. 2020); *Orian v. Commissioner*, T.C. Memo. 2010-234, 2010 Tax Ct. Memo LEXIS 269, at *16–17; *Kovacevich v. Commissioner*, T.C. Memo. 2009-160, 2009 Tax Ct. Memo LEXIS 160, at *16.

**[\*9]** below, we would overrule AO Smith's determinations pertaining to 2006 and 2007 under either standard of review. As for her determinations pertaining to 2010, 2011, and 2012, we would uphold them under either standard of review. Accordingly, we need not decide which standard applies. *See Dixon v. Commissioner*, 141 T.C. 173, 184 (2013); *Estate of Adell v. Commissioner*, T.C. Memo. 2014-89, at \*10–11; *Golub v. Commissioner*, T.C. Memo. 2013-196, at \*7.

## II.    *Evidentiary issue*

The First Stipulation of Facts includes Exhibits 37–P, 38–P, 39–P, 40–P, 41–P, and 42–P, to which respondent objected on the grounds of relevance. At trial we reserved ruling on respondent's objections. Respondent subsequently withdrew his objections to those Exhibits in his supplemental briefs. Accordingly, we will admit Exhibits 37–P, 38–P, 39–P, 40–P, 41–P, and 42–P into evidence.

## III.    *Jurisdiction*

Before we consider petitioner's informal claim argument, we address our jurisdiction to review Appeals' determination whether to apply petitioner's 2005 overpayment against the liabilities at issue. Our jurisdiction in CDP cases generally does not permit us to consider matters regarding nondetermination years—i.e., tax years that are not the subject of the collection action before us. *See, e.g.*, *Swanberg v. Commissioner*, T.C. Memo. 2020-123, at \*9. But we may consider facts and issues from other years to the extent they "are relevant in evaluating a claim that an unpaid tax has been paid." *Freije v. Commissioner*, 125 T.C. 14, 27 (2005). An available credit from another year is a fact that may affect the amount of the taxpayer's unpaid tax for the year before the Court. *Weber v. Commissioner*, 138 T.C. 348, 371–72 (2012).

### A.    *Credit elects and other overpayments*

On his 2005 return, petitioner elected to apply his overpayment against his estimated tax for 2006. That election is authorized by section 6402(b) and Treasury Regulation § 301.6402-3(a)(5). The latter provides:

> If the taxpayer indicates on its return (or amended return) that all or part of the overpayment shown by its return (or amended return) is to be applied to its estimated income

**[\*10]** tax for its succeeding taxable year, such indication shall constitute an election to so apply such overpayment . . . .

"The subject of such an election is known as a 'credit elect overpayment' or simply a 'credit elect.'"[12] *Weber*, 138 T.C. at 357 (quoting *FleetBoston Fin. Corp. v. United States*, 483 F.3d 1345, 1347 (Fed. Cir. 2007)). In *Weber* we held that we have jurisdiction to consider a non-determination-year credit elect claimed on a return for the determination year. *Id.* at 360. We stated:

> We note that a credit elect overpayment is not a claimed overpayment of an unrelated liability that the taxpayer asks us to adjudicate and then to offset against the different liability that is the subject of the IRS's collection efforts. Rather, the credit elect overpayment is a credit that a taxpayer is explicitly permitted by regulation to report on the income tax return for the year at issue. In such an instance—where a credit elect overpayment is claimed on the return for the year at issue—we have held that ". . . the amount unpaid after application of credits to which [the taxpayer] is entitled, is properly at issue" in a CDP case.

*Id.* (quoting *Landry*, 116 T.C. at 62).

We also may consider "cascading" credit elects—i.e., older credit elects which affect the calculation of the credit elect at issue—provided they do not "implicate years or issues so remote from the year at issue that they should not fall within a CDP case." *See id.* at 361 n.10. In *Weber* the taxpayer asserted that a credit elect from 2007, a nondetermination year, offset his 2008 tax liability. *Id.* at 360. Because the taxpayer's 2007 credit elect depended on the existence of a credit elect from 2006, we decided "the merits of the credit elect overpayment from 2006 as reported on the 2007 return."[13] *Id.* at 360–61.

---

[12] The taxpayer's election to apply an overpayment against the succeeding year's liability is not binding on the Commissioner. *Weber*, 138 T.C. at 357; *see* Treas. Reg. § 301.6402-3(a)(6). Thus, a taxpayer may request a credit elect, but the Commissioner has discretion whether to allow it or instead to credit the overpayment against another liability owed by the taxpayer or to refund it. *Weber*, 138 T.C. at 357.

[13] In *Weber* the Commissioner did not dispute that the taxpayer had overpaid his 2006 income tax. *Weber*, 138 T.C. at 361. Similarly, respondent does not dispute

**[\*11]** With respect to unrelated liabilities, however, we held in *Weber* that we lack jurisdiction "to adjudicate a disputed refund claim that is unrelated to the liability the IRS proposes to collect." *Id.* at 366, 369. Although we may consider "whether a credit available from another tax year should be applied to the taxpayer's liability for the year before the Court," we may do so only if that other credit "indisputably exists." *Del-Co W. v. Commissioner*, T.C. Memo. 2015-142, at \*6–7 (citing *Weber*, 138 T.C. at 366). A mere claim for a credit "is not an '*available* credit,'" and such a claim "need not be resolved before the IRS can proceed with collection of the liability at issue." *Weber*, 138 T.C. at 371–72; *see Del-Co W.*, T.C. Memo. 2015-142, at \*7–8.

### B. *Taxable years 2006 and 2007*

Petitioner claimed a credit elect from 2005 on his 2006 return and elected to apply the resulting overpayment to his 2007 estimated tax. He then claimed a credit elect from 2006 on his 2007 return and elected to apply the resulting overpayment to his 2008 estimated tax. Petitioner's credit elect from 2005 is not an overpayment of an unrelated liability, but rather a credit petitioner was authorized to claim on his return for 2006 and, in turn, 2007. *See Weber*, 138 T.C. at 360–61. We therefore have jurisdiction to review Appeals' determinations as to whether petitioner's 2006 and 2007 liabilities are offset by the 2005 credit elect.[14] *See id.*

### C. *Taxable years 2010, 2011, and 2012*

Petitioner also seeks to use the balance of his 2005 overpayment (after application for 2006 and 2007) to offset his liabilities for determination years 2010, 2011, and 2012. In order to do so in this collection case, however, he must establish a chain of cascading credit elects linking those determination years to his 2005 overpayment. *See id.* Otherwise, he must establish that he has an "available credit" from

the existence or amount of petitioner's 2005 overpayment in this case. *Cf. Shuman v. Commissioner*, T.C. Memo. 2018-135, at \*9, \*18 \*32–34 (declining to consider the merits of a non-determination-year credit elect claimed on an amended return where the existence of the reported overpayment was in dispute), *aff'd*, 774 F. App'x 813 (4th Cir. 2019).

[14] Respondent has not refunded the 2005 overpayment or applied it against another liability. *Cf. Weber*, 138 T.C. at 361–62 (holding that the taxpayer had no valid claim of a credit elect because the Commissioner had applied the overpayment against an unrelated liability).

**[\*12]** an unrelated year that we can apply against his 2010, 2011, and 2012 liabilities. *See id.* at 371–72.

The record does not establish a chain of cascading credit elects linking petitioner's 2005 overpayment to his 2010, 2011, and 2012 liabilities. To be sure, the 2005 overpayment resulted in credit elects for 2006 and 2007, and petitioner elected to apply his 2007 overpayment against his 2008 estimated tax. However, tax returns for 2008 and 2009 are not in evidence. Although respondent's transcripts show no tax liabilities for those years, it is unclear whether petitioner elected to apply his 2008 overpayment for 2009 and his 2009 overpayment for 2010. Moreover, the return information for petitioner's 2010 tax year does not reference a credit elect from 2009 and does not include an election to apply an overpayment against his estimated tax for 2011. Because there is no evidence of cascading credit elects from 2008, 2009, and 2010, we cannot link the 2005 overpayment to any years beyond 2007.

Accordingly, we are without jurisdiction to direct the application of credit elects against petitioner's 2010, 2011, and 2012 liabilities unless petitioner has an "available credit" from an unrelated nondetermination year. *See id.* at 366, 369, 371–72. The record does not include any transcripts or other evidence showing such a credit. We therefore sustain respondent's determinations not to apply the 2005 overpayment against petitioner's 2010, 2011, and 2012 liabilities.[15]

IV.    *Credit elects claimed on 2006 and 2007 returns*

For taxable years 2006 and 2007, we must decide whether petitioner has valid claims of cascading credit elects from his 2005 return. To do so, we must determine whether petitioner's election to apply his overpayment was time barred under the limitations period for refunds. Respondent contends that it was. Petitioner, relying on the

---

[15] One might question whether we could apply petitioner's reported overpayment for 2007 against his 2010, 2011, and 2012 liabilities. However, Treasury Regulation § 301.6402-3(a)(5) authorizes credit elects for the "succeeding taxable year" only, and we have found no evidence of cascading credit elects after 2007. We also lack jurisdiction in a CDP case to order a refund or credit of an overpayment. *Greene-Thapedi v. Commissioner*, 126 T.C. 1, 12–13 (2006). Thus, we cannot treat the 2007 overpayment as an "available credit" that we can apply, in the absence of cascading credit elects, for 2010, 2011, and 2012.

**[\*13]** judicially created informal claim doctrine, contends that his election was timely. For the reasons below, we agree with petitioner.

Section 6402(a) provides:

> Sec. 6402(a). General rule.—In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f), refund any balance to such person.

"[U]nder section 6402(a) the application of overpayments of a taxpayer from other years to a particular year of the taxpayer is subject to the applicable refund period of limitations." *Crum v. Commissioner*, T.C. Memo. 2008-216, 2008 Tax Ct. Memo LEXIS 212, at \*4. Thus, if petitioner's overpayment claim is statutorily time barred, his claims of cascading credit elects for 2006 and 2007 would also be time barred. *See Brady v. Commissioner*, 136 T.C. 422, 428 (2011).

Section 6511(a) provides that a taxpayer must file his or her claim for credit or refund of overpayments within the later of three years from the date the return was filed or two years from the date the tax was paid. If the taxpayer filed no return, then the claim must be made within two years from the time the tax was paid. § 6511(a). If the three-year period applies, the refund is limited to the tax paid during the three years, plus any extension of time for filing the return, immediately preceding the filing of the refund claim (three-year lookback period). § 6511(b)(2)(A). If the two-year period applies, the refund is limited to the tax paid during the two years immediately preceding the filing of the refund claim. § 6511(b)(2)(B).

The regulations provide that a properly prepared claim for credit or refund of income tax "shall be made on the appropriate income tax return." Treas. Reg. § 301.6402-3(a)(1). Petitioner's formal refund claim for the 2005 overpayment was his return filed in October 2011. Since his return doubled as his refund claim, the refund claim was by definition filed no later than three years after the return (it was in fact filed simultaneously in the same document), and the claim was therefore timely. *See McGregor v. United States*, 225 Ct. Cl. 566 (1980); *Murdock v. United States*, 103 Fed. Cl. 389, 394 (2012). However, since the

[*14] relevant payment was made beyond the three-year lookback period, section 6511(b)(2)(A) bars petitioner from recovering any 2005 overpayment on the strength of that original return's serving as a refund claim. Petitioner's only other chance of recovery is to show the filing of a refund claim "within . . . 2 years from the time the tax was paid" on April 17, 2006. *See* § 6511(a), (b)(2)(B). He contends that his communications with the IRS in the two years following his April 17, 2006, payment constituted a timely informal claim for refund.

It has long been recognized that a writing which does not qualify as a formal refund claim nevertheless may toll the period of limitations applicable for refunds if (1) the writing is delivered to the Commissioner before the expiration of the applicable period of limitations, (2) the writing in conjunction with its surrounding circumstances adequately notifies the Commissioner that the taxpayer is claiming a refund and the basis therefor, and (3) either the Commissioner waives the defect by considering the refund claim on its merits or the taxpayer subsequently perfects the informal refund claim by filing a formal refund claim before the Commissioner rejects the informal refund claim. *United States v. Kales*, 314 U.S. 186, 194 (1941) (involving a protest letter); *George Moore Ice Cream Co. v. Rose*, 289 U.S. 373 (1933) (involving a defective original claim); *Bemis Bros. Bag Co. v. United States*, 289 U.S. 28, 32 (1933) (involving a defective original claim); *United States v. Factors & Fin. Co.*, 288 U.S. 89, 91 (1933) (involving a claim for refund "of sweeping generality"); *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62 (1933) (involving a claim rejected as too general); *Bonwit Teller & Co. v. United States*, 283 U.S. 258 (1931) (involving a letter and executed waiver form); *Am. Radiator & Standard Sanitary Corp. v. United States*, 162 Ct. Cl. 106, 318 F.2d 915, 920 (1963). There are no bright-line rules as to what constitutes an informal claim. *Turco v. Commissioner*, T.C. Memo. 1997-564, 1997 Tax Ct. Memo LEXIS 650, at *7 (citing *New England Elec. Sys. v. United States*, 32 Fed. Cl. 636 (1995)); *see also PALA, Inc. Emps. Profit Sharing Plan & Tr. Agreement v. United States*, 234 F.3d 873, 877 (5th Cir. 2000). Rather, each case must be decided on its own particular set of facts. *Turco*, 1997 Tax Ct. Memo LEXIS 650, at *8. The relevant question is whether the Commissioner knew or should have known that a refund claim was being made. *Id.*

Petitioner satisfied the requirements for making an informal refund claim. The IRS received a writing—i.e, the March 28, 2008, letter—from petitioner within two years of his payment. In the letter petitioner referenced his pending divorce and stated that he expected his payment to satisfy his anticipated tax liability for 2005, with a

**[\*15]** surplusage available for taxable years 2006 through 2008. The IRS did not reject his request or insist on a formal claim that complied with the regulations. To the contrary, in two responsive letters, the IRS advised petitioner that it was reviewing his claim. The first states: "[W]e haven't completed all the research necessary for a complete response. We will contact you again within 45 days to let you know what action we are taking. You don't need to do anything further now on this matter." The second states: "Please allow an additional 45 days for us to obtain the information we need and to let you know what action we are taking." Petitioner received no further communications from the IRS before he filed his 2005 income tax return.

We conclude that the IRS made "a waiver of the requirements of the regulations as to the formality and particularity with which the grounds for refund are required to be stated," *Kales*, 314 U.S. at 197, when it assured him: "You don't need to do anything further." By filing his return before the IRS took any action on his letter, petitioner timely perfected his informal refund claim. *See* Treas. Reg. § 301.6402-3(a)(5) (providing that a properly executed return shall constitute a claim for refund or credit).

Respondent contends that petitioner did not make an informal refund claim. The supplemental notice of determination, which summarizes respondent's reasoning, states:

> The Appeals Officer concluded . . . [the] letter of March 28, 2008 was not a valid informal claim for refund as it does not notify the [IRS that petitioner was] seeking a refund on the December 31, 2005 tax year or that [petitioner] overpaid the taxes on the December 31, 2005 tax year or asked the Service to apply the refund to tax years after 2005.

In reaching this conclusion, however, AO Smith apparently ignored the letter's plain language. In the letter petitioner associated his payment with taxable year 2005, referenced "returns" for 2005 through 2008, and requested that his payment be "credited toward the tax liability associated therewith once *they* are filed." (Emphasis added.)

AO Smith further erred by considering only the March 28, 2008, letter without any regard for the surrounding circumstances. *See Gustin v. U.S. IRS*, 876 F.2d 485, 489 (5th Cir. 1989) ("[T]he writing should not be given a crabbed or literal reading, ignoring all the

[*16] surrounding circumstances which give it body and content. The focus is on the claim as a whole, not merely the written component." (quoting *Am. Radiator & Standard Sanitary Corp.*, 318 F.2d at 920)). The administrative record establishes that petitioner made several contemporaneous phone calls to the IRS regarding his 2005 tax return. Respondent's narratives reflect substantive discussions between petitioner and IRS personnel about the preparation of substitutes for returns and petitioner's pending divorce (the resolution of which would affect the allocation of the joint $150,000 payment). One narrative in February 2008 explicitly references a refund for taxable year 2005. Considering all of the facts and circumstances of this case, we find that the IRS was on notice that petitioner was claiming a refund for 2005. Accordingly, we hold that the cascading credit elects claimed on petitioner's 2006 and 2007 returns were timely and therefore valid. AO Smith's conclusions to the contrary lacked sound bases in fact and law. *See Murphy*, 125 T.C. at 320.

Because the cascading credit elects eliminate petitioner's liabilities for 2006 and 2007, AO Smith abused her discretion by sustaining the proposed levies for those years.

V.    *Other issues*

For taxable years 2010, 2011, and 2012, we consider whether AO Smith abused her discretion in any other respect. In deciding whether the AO abused her discretion, we consider whether she (1) properly verified that the requirements of any applicable law or administrative procedure had been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." *See* § 6330(c)(3).

Except as discussed *supra* Part IV, our review of the record establishes that AO Smith properly discharged all of her responsibilities under section 6330(c). She verified that petitioner's tax liabilities for 2010, 2011, and 2012 were properly assessed. She gave petitioner an opportunity to propose collection alternatives. Petitioner did not avail himself of that opportunity or raise any other issue besides the 2005 credit elect. *See Cavazos v. Commissioner*, T.C. Memo. 2008-257, 2008 Tax Ct. Memo LEXIS 256, at *16 ("It is not an abuse of discretion for an appeals officer to sustain a levy and not consider any collection alternatives when the taxpayer has proposed none."). Petitioner does

**[\*17]** not dispute any part of AO Smith's balancing analysis besides her refusal to apply the 2005 overpayment against his liabilities. *See Mendes v. Commissioner*, 121 T.C. 308, 312–13 (2003) ("If an argument is not pursued on brief, we may conclude that it has been abandoned."). Accordingly, we sustain respondent's determinations with respect to 2010, 2011, and 2012.

VI.    *Conclusion*

For taxable years 2006 and 2007, petitioner's income tax liabilities were offset by valid credit elects. Accordingly, we do not sustain the proposed levies for those years. However, we affirm respondent's determinations to sustain the proposed levies for taxable years 2010, 2011, and 2012.

We have considered the parties' arguments and, to the extent not addressed herein, conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate decision will be entered.*